IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JERAD BRUNSKILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 06-00205-CV-W-REL |
| | ) | |
| THE KANSAS CITY SOUTHERN | ) | |
| RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant's motion for summary judgment on the grounds that
(1) Plaintiff is not disabled under the Americans With Disabilities Act ("ADA") and (2)
Plaintiff's color vision test(s) were properly administered. I find that (1) Plaintiff is not
disabled within the meaning of the ADA and, thus, not entitled to reasonable
accommodations. I also find that the uncontroverted evidence demonstrates that Defendant
properly administered Plaintiff's color vision tests. As a result, Defendant's motion for
summary judgment will be granted in its entirety.

*I.*      *BACKGROUND*

On March 9, 2006, Plaintiff filed a complaint against Defendant alleging a violation
of the Americans with Disabilities Act ("ADA"). Specifically, Plaintiff alleges that
Defendant medically disqualified him from becoming an engineer and would not allow him
to work in other positions.

On May 11, 2007, Defendant filed a motion for summary judgment and suggestions in support (Doc. Nos. 30, 31).  Plaintiff filed suggestions in opposition on June 14, 2007 (Doc. No. 32).  On July 2, 2007, Defendant filed a reply to Plaintiff's response (Doc. No. 33).

## II.    *STANDARD FOR SUMMARY JUDGMENT*

Rule 56(c) of the Federal Rules of Civil Procedure permits summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The key to determining whether summary judgment is proper is ascertaining whether a genuine issue of material fact exists.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party.  Am. Acad. of Family Physicians v. United States, 75 A.F.T.R.2d 95-1709 (W.D. Mo. 1995), aff'd 91 F.3d 1155 (8th Cir. 1996). The party moving for summary judgment has the burden of proving that these requirements for summary judgment have been met.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

In a summary judgment analysis, a court must first consider whether there are any issues of fact.  If the only issues are issues of law, then summary judgment is appropriate. Disesa v. St. Louis Cmty. Coll., 79 F.3d 92, 94 (8th Cir. 1996).  If issues of fact are raised,

2

a court must consider whether these issues are material to the outcome of the case. Materiality is identified by the substantive law that is to be applied. Anderson, 477 U.S. at 248. Factual disputes that are collateral to the substantive law will not preclude summary judgment. Id.

In addition to the requirement that a dispute of fact be material, the dispute must also be genuine. A dispute of fact is considered genuine if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Id. at 249. When considering a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor. Id. at 255. If the evidence submitted by the non-moving party is merely colorable or is not significantly probative, then summary judgment may be granted. Id. at 249-50.

Where the party moving for summary judgment does not bear the burden of proof at trial, that party must show "that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). This burden is met when the moving party identifies portions of the record demonstrating an absence of a genuine issue of material fact. Id. at 323. If the moving party meets the requirement, the burden shifts to the non-moving party who must set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 248. The trial judge then determines whether a trial is needed -- "whether, in other words, there are any genuine factual issues that properly

can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

## III.    UNCONTROVERTED FACTS

Below, typed in bold, are the facts offered by Defendant that I find to be uncontroverted by the record before me.

1.    **Plaintiff began working as a machinist in KCSR's Pittsburg, Kansas Diesel Shop in 1989. As a machinist, Plaintiff inspected locomotives, performed preventative maintenance and fixed broken locomotives.**

Plaintiff does not dispute this fact.

2.    **Plaintiff worked in this role until 1999, when KCSR closed the Pittsburg Diesel shop for business reasons.**

Plaintiff does not dispute this fact.

3.    **As a result of the shop closure, Plaintiff opted to become a conductor working out of Pittsburg, Kansas.**

Plaintiff does not dispute this fact.

4.    **Conductors do everything but operate the locomotive, such as throw switches, pick up loads, cars, and empties, secure rolling stock, perform air tests and perform ground inspections.**

Plaintiff does not dispute this fact.

5.    **Engineers operate the locomotive.**

Plaintiff does not dispute this fact.

4

6.      **KCSR and the United Transportation Union ("UTU") are parties to a collectively bargained Agreement ("CBA").**

Plaintiff does not dispute this fact.

7.      **During Plaintiff's tenure with KCSR as a conductor, he was a member of the UTU and subject to the CBA that the UTU has collectively bargained for on his behalf, including the seniority system established by that CBA.**

Plaintiff does not dispute this fact.

8.      **Pursuant to a 1985 nationally negotiated agreement between the major railroads and the UTU, significant amendments were made to the CBA applicable to KCSR conductors hired after October 31, 1985, which includes Mr. Brunskill. KCSR (and the other covered railroads) is required to fill its engineer vacancies by forcing conductors with the least amount of seniority to become engineers. In other words, Plaintiff's CBA requires KCSR to force conductors to become engineers if there are not enough volunteers for engine service.**

Plaintiff disputes this fact. However, Plaintiff does not cite any evidence in support of his denial. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

9.      **This amendment also requires an employee to forfeit his conductor position if**

5

**he cannot qualify for engine service. All railroad parties to this amendment interpret the amendment in this manner.**

Plaintiff does not dispute this fact.

10. **In March 2005, KCSR did not have enough engineers.**

Plaintiff disputes this fact. However, Plaintiff does not cite any evidence in support of his denial. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

11. **As such, pursuant to the 1985 amendment applicable to conductors, KCSR was required to fill its engineer vacancies by forcing conductors with the least amount of seniority to become engineers.**

Plaintiff does not dispute this fact.

12. **Plaintiff was one of the employees required to move into engine service.**

Plaintiff does not dispute this fact.

13. **The Federal Railroad Administration ("FRA") has rules and regulations that govern railroad employees. These rules are important for the safety of railroad workers and the railroad generally.**

Plaintiff does not dispute this fact.

14. **KCSR is legally required to follow FRA rules and regulations. The FRA**

6

requires engineers to have color perception, and requires railroads to test engineer candidates for color perception.

Plaintiff does not dispute this fact.

16. **The FRA regulations also identify certain testing methods by which a railroad is to evaluate whether an employee has the required color perception.**

Plaintiff does not dispute this fact.

17. **According to the FRA regulations, there are certain primary tests, one of which must be used, to evaluate an employee's color vision perception. Among those primary tests identified by the regulations as acceptable testing methods is the Ishihara test, which is the most commonly used.**

Plaintiff does not dispute this fact.

18. **The FRA regulations contemplate that, if an employee fails the primary color perception test, the railroad has discretion to give a secondary color perception test.**

Plaintiff does not dispute this fact.

19. **The FRA regulations identify field testing as an acceptable secondary color perception testing method.**

Plaintiff does not dispute this fact.

20. **The regulations do not describe how the field test is to be conducted, but, rather, state that it is the railroad's discretion to conduct the field test in a manner of its choosing in conjunction with its medical advisor.**

Plaintiff does not dispute that the regulations do not describe how the field test is to be conducted and that it is to be performed in conjunction with the railroads medical advisor. He does, however, dispute "any and all other assertions of fact or implications made therein." Importantly, Plaintiff does not cite any evidence in support of his denial. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

21. **There is no prescribed methodology for the manner in which a field test is conducted, and it differs from railroad to railroad.**

Plaintiff does not dispute this fact.

22. **Generally speaking, an employee is put in line of sight with a railroad signal, and asked what color signals he sees and in what sequence as the signals are changed.**

Plaintiff does not dispute this fact.

23. **It does not make a difference whether the field test is conducted from the ground or from the cab of a moving train -- either method is acceptable.**

Plaintiff does not dispute that Dr. Heligman believes that it does not make a difference whether the field test is conducted from the ground or from the cab of a moving train. Plaintiff does dispute "any and all other assertions of fact or implications made therein." Importantly, Plaintiff does not cite any evidence in support of his denial. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence

8

such that a reasonable jury could return a verdict for that party. <u>Anderson</u>, 477 U.S. at 249.

Merely denying a proposed fact without pointing to any evidence in the record does not result

in a proposed fact being considered disputed for summary judgment.

24.     **According to the FRA regulations, it is not the FRA's intention to allow an employee to test and retest his color vision perception forever. Rather, railroads retain the discretion to limit the number of retests an employee can request.**

        Plaintiff does not dispute this fact.

25.     **It is the common practice of railroads to stop testing an employee's color perception if the employee fails both the primary and secondary tests described in the FRA regulations.**

        Plaintiff states that he is without sufficient information to admit or deny these this

alleged uncontroverted fact. He disputes "as to whether the tests were properly conducted."

However, Plaintiff does not cite any evidence in support of his denial. A dispute of fact is

considered genuine only if the non-moving party has produced sufficient evidence such that

a reasonable jury could return a verdict for that party. <u>Anderson</u>, 477 U.S. at 249. Merely

denying a proposed fact without pointing to any evidence in the record does not result in a

proposed fact being considered disputed for summary judgment.

26.     **Consistent with the FRA regulations, it has been KCSR's practice to require engineer candidates to first take a primary test identified as an acceptable test by the FRA.**

        Plaintiff does not dispute this fact.

9

27.     **In the event that the engineer candidate fails this test, KCSR will give the candidate a second chance to demonstrate color perception by performing a field test.**

Plaintiff does not dispute this fact.

28.     **Should an engineer candidate fail both tests, KCSR would disqualify the candidate from engine service for failure to satisfy the FRA requirements.**

Plaintiff states that he is without sufficient information to admit or deny these this alleged uncontroverted fact. He disputes "as to whether the tests were properly conducted." However, Plaintiff does not cite any evidence in support of his denial. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

29.     **Consistent with the FRA regulations and its past practice, KCSR first had Plaintiff's color perception tested using the Ishihara 16-plate test.**

Plaintiff does not dispute this fact.

30.     **Plaintiff failed this Ishihara 16-plate test.**

Plaintiff does not dispute this fact.

31.     **Consistent with the FRA regulations and its past practice, KCSR then afforded Plaintiff the opportunity to take a second test -- a field test.**

Plaintiff does not dispute this fact.

32.     **KCSR Manager of Operating Practices Tim Lewis conducted Plaintiff's field**

10

**test by taking Plaintiff to the yard and asking Plaintiff what colors he could see on the changing signals from different distances.**

Plaintiff does not dispute this fact.

33. **Although Plaintiff could see the colors of the signals at about a quarter of a mile away, he could not see the colors at half a mile away. This concerned Mr. Lewis because an engineer needs to be able to see the signal colors a half a mile away, and he therefore determined that Plaintiff failed the field test.**

Plaintiff disputes this fact. However, Plaintiff does not cite any evidence in support of his denial. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

34. **After Plaintiff failed this field test, KCSR Director of Human Resources Tony Robertson informed Plaintiff that Plaintiff did not qualify to be an engineer because Plaintiff failed his primary test and his secondary field test.**

Plaintiff disputes that he failed the field test. However, Plaintiff does not cite any evidence in support of his denial. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 249. Merely denying a proposed fact without

pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

35.     **In March 2005, Plaintiff consulted an optometrist, Kenneth Brooks, O.D., for a color vision exam.**

Plaintiff does not dispute this fact.

36.     **Kenneth Brooks tested Plaintiff using two color tests -- the Snellen eye chart and the Farnsworth D-15 color tests.**

Plaintiff does not dispute this fact.

37.     **According to Kenneth Brooks, Plaintiff was able to correctly identify the red and green bars on the Snellen eye chart, and Plaintiff made no errors on the Farnsworth D-15 color test.**

Plaintiff does not dispute this fact.

38.     **Neither the Snellen eye chart nor the Farnsworth D-15 are identified by the FRA regulations as approved testing methods for evaluating color perception.**

Plaintiff does not dispute this fact.

39.     **The Farnsworth D-15 test is not an acceptable method for determining whether an employee is qualified to be an engineer because the Farnsworth D-15 evaluates blue and yellow color perception issues, when it is more important for a locomotive engineer to perceive the red, green, and lunar (a white color) colors of railroad signals.**

Plaintiff does not dispute this fact.

40.     **Plaintiff's difficulty with color perception is the red – green deficiency.**

Plaintiff does not dispute this fact.

41. **The Snellen eye chart is not an acceptable method for determining whether an employee is qualified to be an engineer because it is not as precise as other testing methods, such as those identified by the FRA regulations as acceptable primary tests or a field test.**

Plaintiff does not dispute this fact.

42. **Field testing is a superior testing method as compared to the Snellen eye chart and the Farnsworth D-15 test when determining whether an employee is qualified to become an engineer.**

Plaintiff does not dispute this fact.

43. **KCSR afforded Plaintiff a second opportunity to take the Ishihara 16-plate test.**

Plaintiff does not dispute this fact.

45. **KCSR's Chief Medical Officer is Craig Heligman, M.D. In his role as Chief Medical Officer, Dr. Heligman is a medical advisor to KCSR's various departments when issues of fitness for duty because of medical reasons arise.**

Plaintiff does not dispute this fact.

46. **Dr. Heligman also represents KCSR on the Railroad Safety Advisory Committee regarding FRA medical standards for railroad workers.**

Plaintiff does not dispute this fact.

47. **Consistent with KCSR practice, Dr. Heligman was asked to review the results**

13

of Plaintiff's color perception tests and determine whether Plaintiff met the FRA color perception criteria for an engineer.

Plaintiff does not dispute this fact.

48.    **Plaintiff was given three different color perception testing opportunities by KCSR, and one color perception testing opportunity by his own optometrist -- more opportunities than would normally be given to an employee in the railway industry.**

Plaintiff does not dispute he was given three different color perception testing opportunities by Defendant, and one color perception testing opportunity by his own optometrist. Plaintiff does dispute, however, "any and all other assertions of fact or implications made therein." Importantly, Plaintiff does not cite any evidence in support of his denial. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

49.    **Based on his review of Plaintiff's testing opportunities, Dr. Heligman believes that Plaintiff had an appropriate color perception evaluation.**

Plaintiff does not dispute this fact.

50.    **Dr. Heligman had no concerns about the way or manner in which Mr. Lewis conducted Plaintiff's the field test.**

14

Plaintiff does not dispute that Dr. Heligman did not have any concerns about the way or manner in which Mr. Lewis conducted Plaintiff's field test. He does dispute, however, that the field test was properly conducted and what was reported to Dr. Heligman. Importantly, Plaintiff does not cite any evidence in support of his denial. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. <u>Anderson</u>, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

51. **Dr. Heligman spoke with the nurse practitioner who administered Plaintiff's Ishihara 16-plate tests, and also reviewed her evaluation of Plaintiff's color vision.**

Plaintiff does not dispute this fact.

52. **Dr. Heligman considered the results of Plaintiff's Snellen eye chart and Farnsworth D-15 tests that were administered by Kenneth Brooks, but determined that neither of those tests were acceptable testing methods for determining whether an employee meets the FRA color perception criteria to become an engineer.**

Plaintiff does not dispute this fact.

53. **Dr. Heligman reviewed the results of each of Plaintiff's color perception tests and determined that Plaintiff did not meet the FRA color perception requirements to become an engineer. Dr. Heligman therefore concluded that Plaintiff was not qualified to be an engineer.**

Plaintiff does not dispute this fact.

15

54.    **Dr. Heligman prepared a written report containing this determination and submitted it to KCSR.**

   Plaintiff does not dispute this fact.

55.    **Plaintiff believes he should have been allowed to retake his color perception test -- this time with the aid of "chromatic lenses."**

   Plaintiff does not dispute this fact.

56.    **Chromatic lenses do not correct color or allow an individual to distinguish color hues.  Rather, chromatic lenses simply enhance the brightness of certain colors.**

   Plaintiff does not dispute this fact.

57.    Chromatic lenses are not a reasonable accommodation for an employee seeking to be in engine service for two primary reasons.

   Plaintiff disputes this fact.  Although Plaintiff does not cite any evidence in support of his denial, I decline to find this to be an uncontroverted "fact," since the issue of whether chromatic lenses are a reasonable accommodation is a legal conclusion.

58.    **First, the FRA regulations specifically state that employees cannot wear chromatic lenses when taking their primary color perception test.**

   Plaintiff does not dispute this fact.

59.    **Second, chromatic lenses do not correct color perception deficiency, nor do they allow a person to recognize signals differently on the basis of color hue.**

   Plaintiff does not dispute this fact.

60.    **It is important for engineers to be able to distinguish signal color hues because,**

16

**unlike traffic signals, railroad signals do not have a standardized color pattern and a standardized position of lights.**

Plaintiff does not dispute this fact.

61.     **Moreover, it is an industrial standard across railroads that chromatic lenses are not accepted as permissible for either taking color perception tests or as a corrective device in performing an engineer job.**

Plaintiff disputes this fact. However, Plaintiff does not cite any evidence in support of his denial. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

62.     **Consistent with his own opinion and industry standards, Dr. Heligman concluded that allowing Plaintiff to use chromatic lenses was not a safe alternative to color vision for a locomotive engineer. Accordingly, Heligman recommended that KCSR not permit Plaintiff to use chromatic lenses during his color perception testing.**

Plaintiff does not dispute that Dr. Heligman is of the opinion that allowing Plaintiff to use chromatic lenses was not a safe alternative to color vision for a locomotive engineer and that Dr. Heligman recommended that [Defendant] not permit Plaintiff to use chromatic lenses during his color perception testing. Plaintiff does dispute that Dr. Heligman's opinion is consistent with the industry standard. Importantly, Plaintiff does not cite any evidence in

17

support of his denial. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

63.     **KCSR could not promote Plaintiff to engine service because he did not meet the requirements established by the FRA regulations.**

Plaintiff disputes this fact. However, Plaintiff does not cite any evidence in support of his denial. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

64.     **Because he was not qualified to be an engineer, Plaintiff was placed on medically disqualified status.**

Plaintiff disputes that he was not qualified to be an engineer. He also "disputes any and all other assertions of fact or implications made therein." However, Plaintiff does not cite any evidence in support of his denial. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 249. Merely denying a proposed fact without

18

pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

65.     **Once he was disqualified from engine service, Plaintiff's CBA prevented him from being a conductor.**

Plaintiff disputes that the collective bargaining agreement applies in this case. However, Plaintiff does not cite any evidence in support of his position.  A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party.  <u>Anderson</u>, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

66.     **Permitting Plaintiff to be a conductor while forcing more senior conductors to become engineers would breach the CBA.**

Plaintiff disputes that the collective bargaining agreement applies in this case. However, Plaintiff does not cite any evidence in support of his position.  A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party.  <u>Anderson</u>, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

67.     **According to Plaintiff, it is important for KCSR and the UTU to live up to the CBA, and it would be wrong for KCSR to violate the CBA.**

19

Plaintiff disputes that the collective bargaining agreement applies in this case. However, Plaintiff does not cite any evidence in support of his position. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. <u>Anderson</u>, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

68. **Plaintiff's union has not filed any grievances with KCSR regarding his disqualification from engine service, nor for not permitting him to work as a conductor under KCSR's application of the CBA including the 1985 amendment.**

Plaintiff disputes that the collective bargaining agreement applies in this case. He also states he is without specific knowledge to admit or deny this proposed uncontroverted fact. Importantly, Plaintiff does not cite any evidence in support of his position. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. <u>Anderson</u>, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

69. **Since 2005, KCSR has had two other employees who have been disqualified from engine service after being selected from the conductors' ranks pursuant to the 1985 amendment. Neither employee was disqualified for medical reasons. Rather, both employees were disqualified because they failed to successfully complete the engineer training program.**

20

Plaintiff does not dispute that Defendant has had at least two other employees who have been disqualified from engine service. He does dispute, however, that Defendant has allowed other employees reasonable accommodations after they have had difficulty passing the engine service requirements. Importantly, Plaintiff does not cite any evidence in support of his position. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

70. **Upon the disqualification of these employees, KCSR applied the 1985 amendment and determined that it could not retain them as conductors, because doing so would be in violation of the CBA.**

Plaintiff disputes that the collective bargaining agreement applies in this case. However, Plaintiff does not cite any evidence in support of his position. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

71. **After he was disqualified from engine service, Plaintiff expressed interest in a vacant carman position in the Pittsburg, Kansas area.**

Plaintiff does not dispute this fact.

21

72. **Plaintiff never applied or submitted a formal application for the vacant carman position.**

Plaintiff disputes this fact.

In support of this fact, Defendant cites page 161, lines 15-18 of Plaintiff's deposition:

Q:     Did you ever apply or submit a formal application for the carman position you just told me about?
A:     No.

To controvert this proposed fact, Plaintiff states he "made a verbal application and willingness to accept the position with Robert Powell, Mechanical Supervisor in Pittsburg, Kansas." In support of his position, Plaintiff cites page 154, lines 22-25 of his deposition:

A:     . . . Regardless though I finally accepted and said yes, I will take the job and he said okay, then he was going to make the phone calls to Tim Lincoln. . . .

After reading surrounding pages of Plaintiff's deposition transcript (i.e., pages 152-161) for context, I find this fact to be uncontroverted. The transcript reveals that Plaintiff did tell Robert Powell he would accept the vacant carman position created by Mark Shonkwiler's dismissal. However, when Plaintiff was then asked whether he ever applied or submitted formal application for that very job, he testified that he had not. Because Defendant's proposed fact speaks to "applying" rather than "accepting," I find it to be uncontroverted.

73. **This vacant carman position required Plaintiff to have a Commercial Driver's License ("CDL").**

Plaintiff does not dispute this fact.

74. **Tony Robertson discussed the vacant carman position with Plaintiff, and told**

**him that once Plaintiff provided documentation showing he had a CDL, KCSR would**

**make sure that Plaintiff was considered for the vacant carman position.**

Plaintiff disputes this fact.

In support of its proposed fact, Defendant cites page 28, line 18 through page 29, line

13 of Tony Robertson's deposition:

Q:  Did you have any conversations after that conversation with the plaintiff?
A:  I've had numerous conversations with Mr. Brunskill.
Q:  About the car man position?
A:  Yes. Even after that we relayed information or conversations back and forth that he was in the process of obtaining a CDL. He was doing a full study packet trying to make sure he passes the examinations for his driver's license.
Q:  And is that how the issue of the car man position in either Pittsburg or Neosho, is that how it was left?
A:  It was left at once he provided documentation that he met the requirements of the position, at that point we would make sure that he would be considered an applicant for the position.
Q:  Has the plaintiff ever provided you any of that documentation?
A:  I never received any documentation from him identifying that he obtained a CDL.

To controvert this proposed fact, Plaintiff states he had a conversation with Robert Powell

at which time Plaintiff was told that he would not be considered for the vacant carman

position as Human Resources had stated that he was "unhireable." In support of his position,

Plaintiff cites page 155, lines 10-22 of his deposition:

A:  . . . And when I called him he said Jerad, you're not getting the job. And I said why. And he says I don't know. He said that it went all the way up to the top. John Foster, who was the chief mechanical officer, vice president of some sort of the railroad went to human resources on my behalf after they turned down Tim Lincoln. The term that Bob Powell used was unhireable which is just - - you can call me a dirty son of a bitch, a lot of things, but

23

> unhireable. I have a work ethic, work circles around kids half my age. I'm
> a good worker and to use a term like that just I found very insulting.

The evidence offered by Plaintiff does not controvert Defendant's proposed fact. Defendant's proposed fact describes a conversation between Tony Robertson and Plaintiff. By contrast, the testimony cited by Plaintiff is based on a conversation Plaintiff had with Robert Powell. Because Plaintiff's conversation with Robert Powell does not disprove the fact that he also had a conversation with Tony Robertson, this fact is uncontroverted.

75. **Tony Robertson never received any documentation from Plaintiff illustrating that Plaintiff had obtained a CDL.**

Plaintiff disputes this fact.

In support of this fact, Defendant cites page 29, lines 10-13 of Tony Robertson's deposition:

> Q:    Has the plaintiff ever provided you any of that documentation?
> A:    I never received any documentation from him identifying that he obtained
>       a CDL.

Plaintiff opposes this fact by stating he "was in the process of obtaining his CDL having already acquired a CDL learner's permit." He cites page 181, lines 6-18 of his deposition in support:

> A:    Fort Scott. Early summer possibly of 2005. Yeah, because I believe I was
>       in the process then of attaining the CDL.
> Q:    Did you receive a CDL at that time?
> A:    No. What I received was a learner's permit and that's what I flashed you
>       earlier. I have to complete the physical which the physical examination was
>       by my family doctor and I have to take a driving test but I have to have a
>       vehicle to drive during the driving test. And I have no -- have not a vehicle
>       to drive for a CDL with air brake[s]. I do not own a vehicle with air brakes.

The evidence offered by Plaintiff does not controvert Defendant's proposed fact. The fact that Plaintiff was in the process of obtaining a CDL does not speak to whether Tony Robertson ever received ultimate documentation of such; in fact, Plaintiff's testimony that he had not completed the requisite physical and driving test demonstrates he had not yet obtained a CDL. I, therefore, find this fact to be uncontroverted.

76. **Plaintiff did not and does not have a CDL. Plaintiff has not yet determined whether he plans to get a CDL.**

Plaintiff does not dispute that he has not yet determined whether he plans to complete his CDL requirements. He disputes the remainder of the proposed fact stating he "had obtained a CDL learners permit." However, Plaintiff does not cite any evidence in support of his position. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

77. **Consequently, Plaintiff was not and is not qualified for the vacant carman position in the Pittsburg area.**

Plaintiff disputes this fact. However, Plaintiff does not cite any evidence in support of his position. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence

25

in the record does not result in a proposed fact being considered disputed for summary judgment.

78. **Had Plaintiff obtained a CDL, he would have been considered for the vacant carman position.**

Plaintiff disputes this fact, stating that he "does not have enough information to admit these alleged uncontroverted facts." However, Plaintiff does not cite any evidence in support of his position. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

79. Plaintiff never applied or submitted a formal application for any other position with KCSR.

Plaintiff disputes this fact.

In support of its proposed fact, Defendant cites page 161, lines 19-22 of Plaintiff's deposition:

Q:    Did you ever apply or submit your application for any other position with the Kansas City Southern Railroad?
A:    No.

Plaintiff states he "expressed an interest in any position on the railroad in the Pittsburg area," citing page 162, lines 17-18 of his deposition in support:

A:    I believe I expressed interest in any position on the railroad in the Pittsburg area.

Defendant's fact states that Plaintiff never "applied or submitted formal application"; Plaintiff's belief that he expressed an interest in another position does not contradict Defendant's proposed fact. However, I note that Defendant does not dispute Plaintiff's thirty-fifth proposed fact, in which Plaintiff states he applied for a position as mechanical foreman over the internet. Because this creates an issue of fact, I find Defendant's proposed fact number seventy-nine remains controverted.

80. **Plaintiff would not and will not transfer to a job that would require him to relocate out of the Pittsburg area. Plaintiff communicated this to KCSR management officials.**

Plaintiff does not dispute that he told Defendant he was not willing to relocate previous to being discharged. He denies any statement that he was unwilling to relocate following his discharge and states he would be willing to relocate if Defendant would "put him back to work." However, Plaintiff does not cite any evidence in support of his position. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

81. **Other than the vacant carman position, Plaintiff is not aware of any other**

vacant positions in the Pittsburg area that he believes he was qualified for when he was disqualified from engine service in 2005.

Plaintiff does not dispute that he had no personal knowledge and was not alerted to any other vacant positions other than the carman position.

82.     **Plaintiff filed this action against KCSR on March 9, 2006, alleging that KCSR violated the ADA by failing to accommodate him on the basis of perceived disability.**

Plaintiff does not dispute this fact.

83.     **Plaintiff does not believe that his color vision deficiency limits his ability to perform daily tasks.**

Plaintiff does not dispute that he does not believe his color vision deficiency limits his ability to perform daily tasks. He "disputes any and all other assertions of fact or implications made therein." However, Plaintiff does not cite any evidence in support of his position. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 249. Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment.

84.     **Plaintiff has a driver's license and drives a car.**

Plaintiff does not dispute this fact.

85.     **Plaintiff does not consider himself disabled. Rather, Plaintiff contends that KCSR regarded him as disabled because of his color perception deficiency.**

Plaintiff does not dispute this fact.

86.    **During Plaintiff's employment with KCSR, no KCSR employee ever made any comments to Plaintiff that he believed to be negative or offensive to him on the basis of his color perception deficiency, nor did any KCSR employee ever tell Plaintiff he or she believed him to be disabled.**

Plaintiff does not dispute that no employee ever made any comments to him that he believed to be negative or offensive to him about his color perception deficiency, or that he was never told by an employee to his face that he or she believed Plaintiff to be disabled. However, Plaintiff states that Tim Lewis referred to Plaintiff's color perception deficiency as a disability in a company e-mail and once Plaintiff failed the color vision test Defendant medically disqualified him from any position within the railroad.

In support of this fact, Defendant cites page 171, lines 11-19 of Plaintiff's deposition:

Q:    During your employment with Kansas City Southern did anyone with the company make any comments that you believed to be negative or offensive to you on the basis of your – or regarding your color vision acuity?
A:    No, ma'am.
Q:    Did anyone ever tell you they believed you to be disabled?
A:    Tell me to my face, no, ma'am.

To controvert this fact, Plaintiff cites Tim Lewis' e-mail message:

Mr. Brunskill does have problems with the color of signals.  At a half a mile away he states the colors seem to look the same.  At a quarter of a mile away he can distinguish the differen[ce] in the colors.  On a 3 light signal he has no problem because he knows the location of the aspects, high-green, middle-yellow, low-red. Intermediate signals didn't seem to be a problem as he could tell the color as we approached.  I feel Mr. Brunskill should probably not be made an engineer, but should not be punished for his disability.  He has been an exceptional conductor for

29

the past six years and being held out of service only weakens his enthusiasm toward his job.

Importantly, Plaintiff does not dispute the substance of Defendant's proposed fact, i.e., whether any of Defendant's employees made negative or offensive comments to him about his color perception deficiency or told Plaintiff they believed him to be disabled. The evidence offered by Plaintiff to controvert Defendant's proposed fact speaks to another issue entirely -- whether any of Defendant's employees may have held beliefs about Plaintiff's color perception disability that they did not make known to Plaintiff. This proposed fact is uncontroverted.

87. **Plaintiff believes that KCSR should have accommodated him by permitting him to take his color perception testing with the aid of chromatic lenses.**

Plaintiff does not dispute this fact.

88. **Alternatively, Plaintiff suggests that KCSR should have accommodated him by reassigning him back to a conductor.**

Plaintiff does not dispute this fact.

89. **Plaintiff also believes that KCSR should have accommodated him by reassigning him to the vacant carman position in Pittsburg, Kansas.**

Plaintiff does not dispute this fact.

90. **After being medically disqualified from KCSR, Plaintiff became a conductor for Watco Companies in Pittsburg.**

Plaintiff does not dispute this fact.

30

91.   **Plaintiff is not represented by a union in his employment at Watco.**

      Plaintiff does not dispute this fact.

IV.   *ADDITIONAL UNCONTROVERTED FACTS*

      In his response, Plaintiff offered additional uncontroverted facts. Below, the facts typed in bold are those that I find to be undisputed based on the admissible evidence before me. Defendant objects to many of Plaintiff's proposed facts on the basis of materiality; I will only consider those facts that I find to be material in my application of the controlling law to this case.

1.    **Previous to March of 2005, Plaintiff notified KCSR through its agent Bill Richmond that he would not be able to pass the color vision test if forcefully promoted to engineer.**

      Defendant does not dispute this fact but states that it is immaterial.

2.    **Previous to March of 2005, Plaintiff contacted Richard Vendetti in Human Resources for KCSR about wanting to transfer out of the transportation department. Plaintiff was not transferred out of the transportation department at that time.**

      Defendant does not dispute this fact but states that it is immaterial.

3.    **In March of 2005, Plaintiff was notified that he was being "promoted" to the position of engineer trainee.**

      Defendant does not dispute this fact but states that it is immaterial and "essentially duplicative" of Defendant's fact numbers 10-12.

4.     **Plaintiff had to initially take the Ishihara 15[1] plate test in order to qualify to be an engineer.**

Defendant does not dispute this fact but states that it is immaterial and "essentially duplicative" of Defendant's fact number 29.

5.     **Plaintiff failed the initial Ishihara 15 plate test.**

Defendant does not dispute this fact but states that it is immaterial and "duplicative" of Defendant's fact number 30.

6.     **Plaintiff was then given a secondary test in the form of a field examination.**

Defendant does not dispute this fact but states that it is immaterial and "essentially duplicative" of Defendant's fact number 31.

7.     **Jarod Garrett, a KCSR engineer, informed the Plaintiff that after Mr. Garrett had failed the Ishihara 15 plate test, due to his color vision acuity, instead of being forced to take a field examination Mr. Garrett was allowed to take an alternative lantern test.**

Defendant disputes this fact on grounds that it constitutes inadmissible hearsay and because Plaintiff lacks personal knowledge.

In support of this fact, Plaintiff cites page 114, lines 10-13 of his deposition:

A:     Mr. Jared Garrett from Heavener, Oklahoma told me he took a lantern test after her failed the Ishihara 15 plate color test down in Shreveport, Louisiana.

---

[1] Throughout his additional proposed facts, Plaintiff refers to the Ishihara test as the "Ishihara 15-plate test." I note that 49 C.F.R. § 240.121 app. F does not refer to the "Ishihara 15-plate" as an acceptable testing protocol.

32

Hearsay is defined as "a statement, other than one made by the declarant . . . offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(d). Review of Plaintiff's suggestions in opposition demonstrate Plaintiff seeks to use this fact to prove the truth of the matter asserted, i.e., that Mr. Garrett was given the Lantern test after failing the Ishihara test (Doc. No. 32, p. 26). However, an admission by a party-opponent is not hearsay. Fed. R. Evid. 801(d)(2). "[A] statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" falls within this category. Fed. R. Evid. 801(d)(2)(D). I, therefore, find this fact to be uncontroverted.

8.    **Mr. Brunskill was not afforded the opportunity to take a lantern test.**

Defendant does not dispute this fact but states that it is immaterial.

9.    **Tim Lewis administered a field examination to Mr. Brunskill.**

Defendant does not dispute this fact but states that it is immaterial as it is "essentially duplicative" of Defendant's fact number 32.

10.    **The field examination was to take place on a moving train with two other crewmen, Kerry Rubinek and Charles Wackerly, however, Mr. Rubinek and Mr. Wackerly were called onto another job.**

Defendant does not dispute this fact but states that it is immaterial.

11.    **Tim Lewis expressed to the Plaintiff that it was the day after his birthday and he had a few drinks the evening before and really didn't want to ride a train.**

Defendant does not dispute this fact but states that it is immaterial.

33

12. **Tim Lewis had the Plaintiff stand and call out the signals as they appeared, at a distance of a quarter mile.**

Defendant does not dispute this fact but states that it is immaterial.

13. Mr. Brunskill correctly identified the signals, to no objections from Mr. Lewis.

Defendant disputes this fact.

In support of his fact, Plaintiff cites page 133, lines 6-20 of his deposition:

Q:     Did you correctly identify the colors?
A:     Absolutely.
Q:     How do you know that you correctly did?  Did Mr. Lewis tell you that you
       correctly identified the colors during that field examination?
A:     He didn't tell me that I was wrong and he said you're sure it's green.  So I
       know when I see green.  And the Pepsi can that's not here now had red on
       it and I know that it was red.  Otherwise you all would have been saying
       something.
          So, yes, I correctly identified the colors that day of the field exam, but
       it was Mr. Lewis' fiction that brought me down.

To controvert this proposed fact, Defendant refers to its proposed fact number 33, in which it was uncontroverted that Mr. Lewis determined Plaintiff failed the field test since he could not see the signal colors a half a mile away.  Additionally, the evidence cited by Plaintiff does not support this proposed fact.  Plaintiff's deposition testimony that  "Mr. Lewis' fiction . . . brought [him] down" indicates Mr. Lewis did not believe Plaintiff correctly identified the signals.  I find this fact to be controverted.

14. Mr. Brunskill passed the field examination, as it was given.

Defendant disputes this fact.

In support of his fact, Plaintiff cites page 133, lines 6-20 of his deposition:

34

Q:    Did you correctly identify the colors?
A:    Absolutely.
Q:    How do you know that you correctly did?  Did Mr. Lewis tell you that you correctly identified the colors during that field examination?
A:    He didn't tell me that I was wrong and he said you're sure it's green.  So I know when I see green.  And the Pepsi can that's not here now had red on it and I know that it was red.  Otherwise you all would have been saying something.

    So, yes, I correctly identified the colors that day of the field exam, but it was Mr. Lewis' fiction that brought me down.

    To controvert this proposed fact, Defendant refers to its proposed fact number 33, in which it was uncontroverted that Mr. Lewis determined Plaintiff failed the field test since he could not see the signal colors a half a mile away.  The evidence offered in support of Defendant proposed fact number 33 included Mr. Lewis' deposition testimony that Plaintiff failed the field test (page 28, line 22 - page 29, line 2).  Additionally, the evidence cited by Plaintiff in conjunction with the instant proposed fact does not support his assertion; that is, Plaintiff's deposition testimony that  "Mr. Lewis' fiction . . . brought [him] down" indicates Plaintiff did not pass the field examination.  I find this fact to be controverted.

15.  **Mr. Brunskill informed Tim Lewis that** he could pass this test but where **he might have difficulty** would be **in certain light conditions, [such as] on a double stacked signal**.

    Defendant disputes this fact.

    In support of his fact, Plaintiff cites page 130, lines 4-7 of his deposition:

A:    .  .  .  a train and they were going to have to wait.  Tim expressed to me that it was the day after his birthday and he had a few drinks the evening before and really didn't want to ride a train.

35

This testimony clearly does not support Plaintiff's proposed fact. However, as Defendant points out, Plaintiff's deposition testimony on page 130, lines 22-25 actually contains Plaintiff's testimony on this subject:

> A:     .  .  .   And I told Tim, I said well, in certain light conditions on a double stacked signal, that's one light over another light, that's where I'm possibly going to have problems.

This testimony supports the portion of the proposed fact that Plaintiff told Mr. Lewis that it was possible he would have difficulty in certain light conditions. Plaintiff's testimony does not support his assertion in the proposed fact that he could pass the test. As a result, I find only the portion of Plaintiff's proposed fact typeset in bold to be uncontroverted.

16.     **Mr. Brunskill gave Tim Lewis the example, "when you make the approach to Sallisaw and you're on the straightaway look at the interlocker, I have to maybe get a half mile from it before I can tell what color it is possibly."**

Defendant does not dispute this fact but states that it is immaterial.

17.     Solely based on Mr. Brunskill's verbal example of when he might have difficulty, despite Mr. Brunskill successfully identifying signals in his field examination, **Tim Lewis wrote an e-mail to members of management at KCSR and human resources stating that Mr. Brunskill had problems with the color of signals and that Mr. Brunskill should probably not be made an engineer.**

Defendant disputes this fact.

In support of his proposed fact, Plaintiff cites Tim Lewis' e-mail:

36

Mr. Brunskill does have problems with the color of signals. At a half a mile away he states the colors seem to look the same. At a quarter of a mile away he can distinguish the differen[ce] in the colors. On a 3 light signal he has no problem because he knows the location of the aspects, high-green, middle-yellow, low-red. Intermediate signals didn't seem to be a problem as he could tell the color as we approached. I feel Mr. Brunskill should probably not be made an engineer, but should not be punished for his disability. He has been an exceptional conductor for the past six years and being held out of service only weakens his enthusiasm toward his job.

In disputing this proposed fact, Defendant states Mr. Lewis' e-mail is inadmissible evidence because it is not properly authenticated. Defendant is correct in that e-mails must be authenticated through an affidavit or deposition. See Shanklin v. Fitzgerald, 397 F.3d. 596, 602 (8th Cir. 2005). Although Plaintiff did not authenticate Mr. Lewis' e-mail, I decline to find it inadmissible on this basis. Rather, Defendant attached Mr. Lewis' deposition as Exhibit 4 to their Motion for Summary Judgment. In the deposition, Mr. Lewis testified he tested engineers, reported the results to the general manager (who was J.R. Thornell in March or April of 2005), and sent an e-mail following Plaintiff's field test that was marked as "Deposition Exhibit 1." (Defendant's Exhibit 4, page 6, line 23 - page 8, line 5; page 12, lines 8-22). Deposition Exhibit 1 contained the following language: "I feel Mr. Brunskill should probably not be made an engineer but should not be punished for his disability."; and "He has been an exceptional conductor for the past six years, and being held out of service only weakens his enthusiasm toward his job." (Defendant's Exhibit 4, page 17, lines 1-9; page 24, line 22 - page 25, line 4).

My review of Plaintiff's Exhibit 3 suggests that it is the same e-mail referred to as "Deposition Exhibit 1" in Mr. Lewis' deposition. The e-mail was sent on March 18, 2005,

to J.R. Thornell, amongst others. Additionally, the e-mail also contains the language "I feel Mr. Brunskill should probably not be made an engineer, but should not be punished for his disability."; and "He has been an exceptional conductor for the past six years, and being held out of service only weakens his enthusiasm toward his job.". As a result, I will consider Mr. Lewis' e-mail as offered by Plaintiff.

Mr. Lewis' e-mail states Plaintiff had problems with the color of signals and that he should "probably not been made an engineer." However, the text of the e-mail does not support the remainder of Plaintiff's proposed fact. I find only the portion of the proposed fact typeset in bold to be uncontroverted.

18. **Tim Lewis** perceived Mr. Brunskill as having a disability evidenced by his statement **[stated] in his email to management and human resources that Mr. Brunskill should not be punished for his "disability."**

In support of his proposed fact, Plaintiff cites Tim Lewis' e-mail:

Mr. Brunskill does have problems with the color of signals. At a half a mile away he states the colors seem to look the same. At a quarter of a mile away he can distinguish the differen[ce] in the colors. On a 3 light signal he has no problem because he knows the location of the aspects, high-green, middle-yellow, low-red. Intermediate signals didn't seem to be a problem as he could tell the color as we approached. I feel Mr. Brunskill should probably not be made an engineer, but should not be punished for his disability. He has been an exceptional conductor for the past six years and being held out of service only weakens his enthusiasm toward his job.

For the reasons set forth in response to Plaintiff's proposed fact number 17, I will consider Mr. Lewis' e-mail. In the e-mail, Mr. Lewis stated that Plaintiff "should not be punished for his <u>disability</u>" (emphasis added). This statement supports the portion of

38

Plaintiff's proposed fact typeset in bold.  I decline to find the remainder of the fact to be uncontroverted, however, as whether one is "disabled" under the ADA is a legal conclusion.

19.     **Mr. Brunskill contacted Dennis Marzak, head of rules and safety for KCSR, and informed him that he felt that the field test was not appropriately conducted by Tim Lewis and that he should contact Mr. Lewis to verify its validity.**

Defendant does not dispute this fact but states that it is immaterial.

20.     **That same day, Dennis Marzak telephoned Mr. Brunskill and informed him, "we'll get you another examination scheduled."**

Defendant does not dispute this fact but states that it is immaterial.

21.     **Mr. Brunskill has never been allowed to take another field examination.**

Defendant does not dispute this fact but states that it is immaterial.

22.     **Following KCSR failing Mr. Brunskill on his field test, Mr. Barzee instructed Mr. Brunskill to go back to Mt. Carmel Hospital to take another eye exam.**

Defendant does not dispute this fact but states that it is immaterial as it is "essentially duplicative" of Defendant's fact number 43.

23.     Upon Mr. Brunskill arriving at Mt. Carmel Hospital, he was told by the nurse that Phil Barzee instructed them to give Mr. Brunskill the same Ishihara 15 plate eye exam that he had originally failed, despite having several other acceptable tests available.

Defendant disputes this fact, arguing that it is not supported by the evidence and is inadmissible hearsay.

39

In support of his fact, Plaintiff cites page 136, lines 14-18 and page 139, lines 1-8 of his deposition:

> A:   . . .  And when I got [to Mt. Carmel Hospital] the nurse told me that they were instructed by Phil Barzee to give me the exact eye examination that he knew that I was going to flunk, that I knew that I was going to flunk.
>
>                                     .   .   .
>
> A:   . . .  examination room and they came in with their little book with the 15 plate, with the Ishihara test.  And I remember expressing - - I wasn't happy about it.  And I thought that surely there was a misunderstanding. There was something else that I was sent here for, but they assured me that the railroad called.  That this is exactly what they told them to give me.

The evidence supported by Plaintiff only supports the portion of his proposed fact that the nurse at Mr. Carmel told Plaintiff Phil Barzee instructed them to administer the Ishihara test.  Despite being supported by Plaintiff's deposition testimony, however, this portion of Plaintiff's proposed fact number 23 is hearsay.  Fed. R. Evid. 801.  As such, it may not be used to defeat Defendant's motion for summary judgment.  Brooks v. Tri-Systems, Inc. 425 F.3d 1109, 1111 (8th Cir. 2005).

24.    FRA regulations state that including the Ishihara 15 plate test, there are 11 additional acceptable eye exam tests for qualification to be an engineer.

Defendant does not dispute this fact but states that it is immaterial.  In support of this fact, Plaintiff cites 49 C.F.R. § 240 app. F.  Review of Appendix F does not list the Ishihara 15-plate as an acceptable eye exam.

25.    **At the direction of an independent optometrist, Dr. Robert Brooks, Mr. Brunskill successfully passed the Ishihara 15 plate test with the aid of a chromatic lens.**

Defendant does not dispute this fact but states that it is immaterial.

40

26. **Mr. Brunskill purchased glasses with a chromatic lens installed in the hopes of using them to retain his employment.**

Defendant does not dispute this fact but states that it is immaterial.

27. **Mr. Brunskill has not been allowed the opportunity to use the chromatic lenses [since] purchasing them.**

Defendant does not dispute this fact but states that it is immaterial.

28. **Following Mr. Brusnkill's discharge, he was contacted by Chris Eads and Robert Powell in regards to the open position of carmen for KCSR, to which Mr. Brunskill expressed an interest.**

Defendant does not dispute this fact but states that it is immaterial.

29. **A couple months went by and Robert Powell telephoned Mr. Brunskill and formally offered him the position of carman.**

Defendant disputes this fact.

In support of his fact, Plaintiff cites page 153, line 20 through page 154, line 6 of his deposition:

A:      Subsequently just I mean with the investigation, the formal investigation, finally took place and it was a couple of months down the road that Shonkwiler was finally officially dismissed. By this time I had already gone to work for the SKOL Railroad, South Kansas and Oklahoma Railroad.

And one afternoon it seemed like Robert Powell called me and said, well, they finally give us a day, being human resources, finally give us permission to replace Mark, do you want the job?

41

To controvert this fact, Defendant argues that Robert Powell did not "formally offer" the carman position to Plaintiff but, instead, merely asked him if he wanted the job and stated he would call Tim Lincoln. Defendant cites page 154, lines 22-25 of Plaintiff's deposition in support of its position:

> A: Regardless though I finally accepted and said yes, I will take the job and he said okay, then he was going to make the phone calls to Tim Lincoln.

The testimony offered by Defendant does not controvert Plaintiff's proposed fact. Rather, Plaintiff's testimony that he "accepted" the job supports Plaintiff's position that Robert Powell offered him a job. Furthermore, Plaintiff's testimony that Robert Powell was then going to call Tim Lincoln does not controvert Plaintiff's proposed fact as Defendant does not offer any evidence on who Tim Lincoln was or what significance a telephone call to Tim Lincoln had on the process. I find this fact to be uncontroverted.

30. **Mr. Brunskill told Robert Powell, "yes, I will take the job."**

Defendant does not dispute this fact but states that it is immaterial.

31. **Mr. Brunskill was in possession of a commercial drivers license learners permit when he verbally accepted the carman position.**

Defendant does not dispute this fact but states that it is immaterial.

32. **Three weeks later, Robert Powell informed Mr. Brunskill that he was not being hired because human resources had deemed him "unhireable."**

Defendant does not dispute this fact but states that it is immaterial.

33. **Mr. Brunskill expressed an interest in any position on the railroad in the**

42

**Pittsburg area.**

Defendant does not dispute this fact but states that it is immaterial.

34.    **Brian Batwell and Russ Fletcher inquired into a mechanics position in Pittsburg on behalf of Mr. Brunskill. Mr. Brunskill received no response.**

Defendant disputes this fact.

In support of his fact, Plaintiff cites page 163, lines 2-9 of his deposition:

A:    I believe that - - let's see. There was another one. Brian Batwell. He was a trainmaster. You almost need a graph to keep track of those management people. If I am not mistaken, Mr. Batwell made some phone calls on my behalf and so did Russ Fletcher expressing the need for a mechanic in Pittsburg and threw my name into the hat to no avail.

Defendant argues that Plaintiff lacks foundation and personal knowledge to testify about the actions of Mr. Batwell and Mr. Fletcher. I disagree. Plaintiff is qualified to testify about inquiries he made concerning employment possibilities with Defendant, including inquiries third parties made on his behalf. This fact is uncontroverted.

35.    **Following Mr. Brunskill being denied employment as a carman, he applied over the internet for a position as mechanical foreman for KCSR but received no response.**

In support of this fact, Plaintiff cites page 178, line 24 through page 179, line 3 of his deposition:

A:    No, ma'am. I believe that after I was denied the employment of the carman, I did apply on the internet with a confirmation number written down at home for the position of the mechanical foreman at Pittsburg.

43

Defendant does not dispute this fact but states that it is immaterial under Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1047 (8th Cir. 1999), as Plaintiff testified he submitted the internet application after he had left KCSR and began working for another employer. To support this argument, Defendant cites the following excerpts from Plaintiff's deposition transcript:

> A: . . . By this time I had already gone to work for the SKOL Railroad, South Kansas and Oklahoma Railroad.
> And one afternoon it seemed like Robert Powell called me and said well, they finally give us a day, being human resources, finally give us permission to replace Mark, do you want the job?
> .    .    .
> Q: Did you make a suggestion about any other jobs since this happened in 2005, March, April 2005?
> A: No, ma'am. I believe that after I was denied the employment of the carman, I did apply on the internet with a confirmation number written down at home for the position of the mechanical foreman at Pittsburg.

Def. Exh. 1, p. 153:24-154:6; 178:21-179:3).

Based on review of the cited deposition I find that Plaintiff did apply over the internet for a mechanical foreman position. Defendant's point is well taken, however, and I note that this application was made after Plaintiff had been medically disqualified from his employment with Defendant.

36.     Mr. Brunskill was willing to accept any position with KCSR including the section gang, switchmen, or a management position.

Defendant disputes this fact.

In support of his proposed fact, Plaintiff cites page 164, lines 13-21 and page 165, lines 16-23 of his deposition:

44

A:      We've already discussed that I'm not computer literate, but I mean if they
        wanted to make me into management. I mean obviously they go through a
        bunch of them. I don't know why the hell I couldn't do that. As far as
        section, I don't know that they replaced anybody on the section gang. I
        mean the ones that have retired or through attrition. I don't know that
        they've replaced any of them.
                                . . . .
A:      Could possibly have held the job in Kansas City as a switchman in the yard.
Q:      Would you have been willing to drive to Kansas City for that job every day?
A:      I wouldn't have been very excited about it. I wasn't afforded the
        opportunity. It was something I never discussed with my family and that's
        something that I would have to do.

The evidence offered by Plaintiff does not support this proposed fact. The cited

testimony on page 164 of Plaintiff's deposition transcript is in response to defense counsel's

question about the positions Plaintiff believed he "could have done." Likewise, Plaintiff's

testimony on page 165 was in response to defense counsel's question about positions

Plaintiff "believed he [was] qualified to hold." Because Plaintiff's testimony spoke to his

perceived ability rather than his willingness to accept the various positions, I find this fact

to be controverted.

37.    **KCSR continues to hire people in the Pittsburg area as trainmen.**

        Defendant does not dispute this fact but states that it is immaterial.

### V.    ANALYSIS

The ADA prohibits discrimination "against a qualified individual with a disability."

42 U.S.C. § 12112(a). Discrimination includes, inter alia, "classifying . . . [an] employee in

a way that adversely affects the opportunities or status of such . . . employee because of the

disability of such . . . employee," "not making reasonable accommodations to the known

45

physical or mental limitations of an otherwise qualified individual" and "failing to select and administer tests concerning employment in the most effective manner to ensure that . . . such test results accurately reflect the skills, aptitude, or whatever other factor . . . that such test purports to measure." 42 U.S.C. § 12112(b)(1), (5), (7).

## A. Disability under the ADA

An individual is disabled within the meaning of the ADA if he: (1) has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff argues that his color perception deficiency constitutes a disability under all three categories.

### 1. Actual Disability

An individual suffers from an actual disability when his or her impairment substantially limits a major life activity. Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). An impairment is "substantially limiting" if the affected individual is "unable to perform a major life activity that the average person in the general population can perform," or if he or she is "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(i)-(ii). Here, the parties do not dispute that color perception deficiency is an impairment but disagree as to

46

whether such impairment substantially limits the major life activities of working and seeing. I find that it does not.

### a. Working

Plaintiff alleges he is substantially limited in the major life activity of working. This major life activity is "substantially limited" when the affected individual is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." 29 C.F.R. § 1630.2(j)(3)(i). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Id.; see also Wood v. Crown Redi-Mix, Inc., 339 F.3d 682, 686 (8th Cir. 2003). In determining whether the individual is precluded from a broad range of jobs, courts may consider whether he or she has worked in or been offered other positions subsequent to the alleged discrimination. See Brunko v. Mercy Hosp., 260 F.3d 939, 942 (8th Cir. 2001)("[I]t is clear from the record that [the plaintiff] was only precluded from performing a narrow range of jobs as evidenced by the fact that she has worked in several nursing jobs after leaving [the hospital] and the fact [the hospital] offered her other positions.").

Plaintiff argues he is substantially limited in the major life activity of working because his color perception deficiency "limits him in finding other opportunities within the company." The uncontroverted facts do not support this argument. Plaintiff does not consider himself disabled. The facts demonstrate that Plaintiff's color perception deficiency only disqualified him from the position of locomotive engineer. After he was disqualified from engine service, Defendant told Plaintiff he would be considered for a vacant carman

47

position upon providing documentation that he had a CDL. As part of this lawsuit, Plaintiff maintains that Defendant should have reassigned him to either the conductor or carman position, thus indicating he believes he is not precluded from holding these positions. He currently works as a conductor for Watco Companies. I, therefore, find that Plaintiff's color perception deficiency only precluded from a single job - that being the position of a locomotive engineer - rather than from the requisite broad range of jobs and is not disabled on this basis.

### b.    Seeing

Plaintiff alleges he is also substantially limited in the major life activity of seeing. Specifically, he contends that at the crux of being able to distinguish colors is an impairment of one's ability to see. Impairments affecting vision do not necessarily substantially limit the major life activity of seeing. Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566 (1999)(holding individuals with monocular vision are not per se disabled); Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999)(holding nearsighted pilots were not disabled); Ferguson v. Whirlpool Corp., No. 99-2112, 2000 WL 1013309, at *3 (Apr. 5, 2000 W.D. Ark.)(finding inability to distinguish colors did not substantially limit ability to see); see also Shannon v. New York City Transit Auth., 189 F. Supp. 2d 55, 62 (S.D. N.Y. 2002); Hoppes v. Commonwealth of Pennsylvania, 32 F. Supp. 2d 770, 774 (M.D. Penn. 1998)(finding individual with color blindness did not have disability in major life activity of seeing). Rather, "whether a person has a disability under the ADA is an individualized inquiry." Sutton, 527 U.S. at 483; see also 42 U.S.C. § 12102(2)("The term 'disability' means, with

48

respect to an individual . . . a physical or mental impairment that substantially limits one or more of the major life activities of such individual")(emphasis added).

The undisputed facts in this case do not indicate that Plaintiff's color perception deficiency rendered him substantially limited him in the major life activity of seeing. Plaintiff does not consider himself disabled and does not believe that his color perception deficiency limits his ability to perform daily tasks. He has a driver's license and drives a car. In fact, the only limitation his color perception deficiency poses is that it precludes him from being a locomotive engineer. This is not the type of substantial limitation contemplated by the ADA. As a result, I find that Plaintiff does not have an actual disability.

## 2.     Record of Having a Disability

Under the ADA, an individual has a record of disability if he or she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 20 C.F.R. § 1630.2(k). The Eighth Circuit has construed this provision to require documentation of such impairment. See, e.g., Taylor v. Nimock's Oil. Co., 214 F.3d 957, 961 (8th Cir. 2000); Weber v. Strippit, Inc., 186 F.3d 907, 915 (8th Cir. 1999).

Plaintiff contends that Defendant has a record of his disability. Prior to March of 2005, Plaintiff told Bill Richmond that he would not be able to pass the color vision test if forcefully promoted to engineer. Plaintiff also contacted Richard Vendetti in Human Resources in Human Resources about transferring out of the transportation department. After Plaintiff failed the Ishihara 16-plate test, Tim Lewis wrote an e-mail to individuals within

49

Defendant's management and human resources department stating that Plaintiff had problems with the color of signals, should probably not be made an engineer, and opining that Plaintiff should not be punished for his "disability." These facts do not constitute a record of disability. Plaintiff's argument that he had a record of being disabled fails due to lack of evidence that he had a history or was misclassified as being substantially limited in a major life activity (e.g., working or seeing). At most, they demonstrate that Plaintiff had a color perception deficiency that precluded him from holding the position of a locomotive engineer. Because the undisputed facts do not show Plaintiff had a record of disability, Defendant's motion for summary judgment is granted on this ground.

## 3. Regarded As Having a Disability

To be regarded as disabled under the ADA, an individual must prove that he or she:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
(3) Has none of the impairments defined in paragraph (h) (1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l). See also Murphy v. United Parcel Service, Inc., 527 U.S. 516, 521-22 (1999); Sutton, 527 U.S. at 489. This category was "intended to combat the effects of 'archaic attitudes,' erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities." Brunko, 260 F.3d at 942. However, '[r]estrictions based upon the recommendations of physicians are not based upon myths or stereotypes about the disabled and thus do not demonstrate a perception of disability." Pittari v. Am. Eagle

50

Airlines, Inc., 468 F.3d 1056, 1063 (8th Cir. 2006); see also Brunko, 260 F.3d at 942. Again, "to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job." Murphy, 527 U.S. at 523.

Plaintiff maintains Defendant regarded him as disabled in that it classified him as "medically disqualified" and "unhireable," thereby limiting his opportunities to apply for other positions.

The undisputed facts demonstrate that none of Defendant's employees ever made comments to Plaintiff that Plaintiff believed to be negative or offensive on the basis of his color perception deficiency, nor did any employee ever tell Plaintiff he or she believed him to be disabled. However, Tim Lewis did write an e-mail to members of management stating that Plaintiff had problems with the color of signals, should probably not be made an engineer, and opining that Plaintiff should not be punished for his "disability." Plaintiff was also told by Robert Powell that he was not being hired to be a carman because human resources had deemed him "unhireable." The context in which each of these statements were made must be considered in order to afford them full meaning.

Plaintiff is subject to the terms of a collective bargaining agreement that required Defendant to fill its engineer vacancies by forcing conductors with the least amount of seniority into the position if there were not enough volunteers. In March of 2005, Defendant did not have enough engineers, and as a conductor with low seniority, Plaintiff was required to move to engine service. Federal Railroad Administration regulations require that engineers have color perception. Plaintiff was tested for color perception and failed both the Ishihara

51

16-plate test and a field test that was administered by Tim Lewis. After Mr. Lewis informed members of management and the human resources department via e-mail that Plaintiff had failed the field test and referred to him as having a "disability," Plaintiff was not immediately discharged. Instead, Defendant afforded Plaintiff a second opportunity to take the Ishihara 16-plate test.

Defendant's Chief Medical Officer, Craig Heligman, M.D., reviewed the results of Plaintiff's tests, determined Plaintiff did not meet the Federal Railroad Administration color perception criterion, and concluded that Plaintiff was not qualified to be an engineer. On this basis, Defendant placed Plaintiff on medically disqualified status. Importantly, the undisputed facts demonstrate Defendant only regarded Plaintiff as unable to perform the engineer position in light of the Federal Railroad Association regulation due to his color perception deficiency. Because this decision was not "based upon myths or stereotypes about the disabled" but, to the contrary, was a result of a physician's recommendation, Defendant's action of placing Plaintiff on medically disqualified status does not demonstrate a perception of disability.

Plaintiff also maintains that he should have been returned to his previous position as a conductor. The parties agree that the collective bargaining agreement prevented Plaintiff from returning to be a conductor. Eighth Circuit law provides that the ADA does not require an employer to violate a collective bargaining agreement in this situation. Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir. 1995)(holding the defendant "had no obligation to terminate other employees or violate a collective bargaining agreement in order to accommodate [the plaintiff], even if it perceived him to have a substantial impairment"); see

52

also <u>Benson v. Northwest Airlines, Inc.</u>, 62 F.3d 1108, 1114 (8th Cir. 1995)("The ADA does not require that [the defendant] take action inconsistent with the contractual rights of other workers under a collective bargaining agreement."). As a result, I find that Defendant did not regard Plaintiff as disabled when it medically disqualified him from being an engineer or when it failed to return Plaintiff to his previous position as a conductor.

After Plaintiff had been discharged, he was contacted by Chris Eads and Robert Powell about an open carman position, to which Plaintiff expressed an interest. Plaintiff also expressed an interest in the carman position to Tony Robertson and Mr. Robinson told Plaintiff he would be considered upon providing documentation showing he had a commercial driver's license. However, Plaintiff never produced such documentation. When Plaintiff "verbally accepted" the carman position, he only had a commercial driver license learners permit. Defendant deemed Plaintiff "unhireable" in connection with informing Plaintiff he was not being hired for this carman position. The undisputed facts do not support Plaintiff's argument that Defendant had "a history of allowing individuals without a CDL to be apprentice carm[e]n while they work on obtaining their CDL." This evidence shows that Defendant did not hire Plaintiff as a carman because he was not qualified for this specific position - not due to his color perception deficiency, but because he was unqualified without a CDL. I, therefore, find that Defendant did not regard Plaintiff as being substantially limited in a major life activity in connection with not hiring Plaintiff as a carman.

Lastly, Plaintiff argues that Defendant regarded him as disabled because he applied online to be a mechanical foreman but received no response. The undisputed facts support

Plaintiff's argument, but this evidence is immaterial as it occurred after Plaintiff was discharged. See Wooten, 58 F.3d at 386 (holding the plaintiff's "evidence that he applied for a job that would have accommodated his limitations is not material [to the issue of whether he was terminated due to a perception that he had a substantial impairment] because the job became available only after he was terminated").

## B. Failure to Accommodate

Plaintiff argues that Defendant discriminated against him in failing to accommodate him "by not allowing him to work at any other job within the company." Failure to accommodate claims under the ADA involve a modified burden-shifting analysis. Canny v. Dr. Pepper, 439 F.3d 894, 900 (8th Cir. 2006). In order to make a prima facie case, a plaintiff must show

> (1) that [he] has a disability within the meaning of the ADA, (2) that [he] is qualified to perform the essential job functions of [his] job, with or without reasonable accommodation, and (3) that [he] suffered adverse employment action because of [his] disability.

Heaser v. Toro Co., 247 F.3d 826, 830 (8th Cir. 2001). Once a plaintiff makes a "facial showing that reasonable accommodation is possible, the burden of production shifts to the employer to show that it is unable to accommodate the employee." Benson, 62 F.3d at 1112 (emphasis omitted) (quoting Mason v. Frank, 32 F.3d 315, 318-19 (8th Cir. 1994)). "If the employer shows that the employee cannot perform the essential functions of the job even with reasonable accommodation, the employee must rebut that showing with evidence of his individual capabilities." Id.

54

As set forth above, supra Section V.A, the undisputed facts show that Plaintiff does not have a disability within the meaning of the ADA. As such, he has not made a prima facie case for failure to accommodate.[2] Defendant's motion for summary judgment is granted on this basis.

## C. Testing Procedures

Plaintiff contends that Defendant discriminated against him by not administering his field test in the most effective manner. He also claims Defendant discriminated against him when it "failed to administer the two subsequent tests in an effective manner that accurately reflected his color visual acuity."

Title 40 of the Code of Federal Regulations, Section 240.121(c)(3) provides that in order to be certified as a locomotive engineer, an individual shall have "[t]he ability to recognize and distinguish between the colors of railroad signals as demonstrated by successfully completing one of the tests in appendix F to this part." Appendix F identifies the following testing protocols as "acceptable testing methods for determining whether a person has the ability to recognize and distinguish among the colors used as signals in the railroad industry": (1) American Optical Company 1965; (2) AOC - Hardy-Rand-Ritter plates - second edition; (3) Dvorine - second edition; (4) Ishihara (14 plate); (5) Ishihara (16 plate); (6) Ishihara (24 plate); (7) Ishihara (38 plate); (8) Richmond Plates; (9) Keystone Orthoscope;

---

[2]Additionally, the Eighth Circuit has held that individuals "regarded as" disabled are "not entitled to reasonable accommodations." Weber, 186 F.3d at 917. Since Plaintiff does not contend that he could perform without a reasonable accommodation, his failure to accommodate claim would also fail as a matter of law on this basis if he were regarded as disabled.

55

(10) OPTEC 2000; (11) Titmus Vision Tester; and (12) Titmus II Vision Tester. The regulations further provide that if an individual does not meet this threshold, he or she shall

> upon request, be subject to further medical evaluation by a railroad's medical examiner to determine that person's ability to safely operate a locomotive. In accordance with the guidance prescribed in appendix F to this part, a person is entitled to one retest without making any showing and to another retest if the person provides evidence substantiating that circumstances have changed since the last test to the extent that the person could now arguably operate a locomotive . . . safely.

49 C.F.R. § 240.121(e). "Changed circumstances would most likely occur if the examinee's medical condition has improved in some way or if technology has advanced to the extent that it arguably could compensate for a . . . vision deficiency." 49 C.F.R. § 240.121 app. F(4). Individuals are not permitted to wear a chromatic lens during an initial test (i.e., using one of the twelve protocols identified in Appendix F). 49 C.F.R. § 240.121 app. F(3).

As stated above, Plaintiff challenges both the field test administered by Mr. Lewis and the second Ishihara test. With regard to his first challenge, Plaintiff argues in his suggestions in opposition to Defendant's motion for summary judgment that (1) Mr. Lewis should have conducted the field test from a moving train rather than from the ground, (2) the field test was not effectively administered since Mr. Lewis did not feel well enough to ride a train, and (3) Plaintiff never actually tested him to determine whether he could identify signals from half a mile away.

Plaintiff's argument that the field test should have been conducted from a moving train and that it was not effectively administered since Mr. Lewis did not feel well enough to ride a train are foreclosed by the uncontroverted facts of this case. Specifically, it is

56

undisputed that the regulations do not describe how the field test is to be conducted but, rather, state that the railroad may exercise its discretion to conduct the field test in a manner of its choosing in conjunction with its medical advisor. There is no prescribed methodology for the manner in which a filed test is to be conducted. Importantly, the parties do not dispute that it does not make a difference whether the field test is conducted from the ground or from the cab of a moving train - either method is acceptable. Moreover, Dr. Heligman believes Plaintiff had an appropriate color perception evaluation and was not concerned about the way or manner in which Mr. Lewis conducted the field test. Because it was acceptable to conduct Plaintiff's field test from the ground, the motive behind doing so is not important. I, therefore, find that Defendant did not discriminate against Plaintiff by failing to administer the field test in the most effective manner.

Likewise, Plaintiff's argument that Defendant never actually tested him to determine whether he could identify signals from a half a mile away is also foreclosed by the uncontroverted facts. It is undisputed that Tim Lewis tested Plaintiff by taking him into the yard and asking Plaintiff what colors he could see on the changing signals from different distances. Although Plaintiff could see the colors of the signals at about a quarter of a mile away, he could not see the colors at a half a mile away. This concerned Mr. Lewis because an engineer needs to be able to see the signal colors a half a mile away. Mr. Lewis therefore determined that Plaintiff failed the field test.

With regard to his second challenge, the way in which subsequent tests were administered, Plaintiff argues that he should have been permitted to wear a chromatic lens during administration of the field test and the second Ishihara test. This challenge also fails for lack of supporting evidence. Here, Plaintiff's difficulty with color perception is a red-green deficiency. It is undisputed that chromatic lenses do not correct color or allow an individual to distinguish color hues. Rather, they simply enhance the brightness of certain colors. It is important for engineers to be able to distinguish signal color hues because railroad signals do not have a standardized color pattern and a standardized position of lights. Plaintiff offered the undisputed testimony of Dr. Heligman, wherein he concluded that allowing Plaintiff to use chromatic lenses was not a safe alternative to color vision for a locomotive engineer. Plaintiff does not offer any evidence to the contrary aside from his own contention. Instead, he relies on a Public Law Record where the Public Law Board directed a railroad to reexamine an employee for color deficiency using a chromatic lens. This decision in an unrelated case is not binding on this Court, and does not controvert the expert medical opinion of Dr. Heligman in this case. Defendant's motion for summary judgment is thus granted on this basis.

## VI. CONCLUSION

For the reasons more fully stated above, it is

ORDERED that Defendant's Motion for Summary Judgment is granted.

58

_/s/ Robert E. Larsen_
_____ ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
February 12, 2008